UNITED STATES DISTRICT COURT
FOR THE
SOUTHERN DISTRICT OF FLORIDA

FILED BY _____ D.C
98 APR 23 PM 12:03
CARLOS JUEHKE
CLERK U.S. DIST. CT.
S.D. OF FLA.-MIAMI

SECURITIES AND EXCHANGE COMMISSION
450 Fifth Street, N.W.
Washington, D.C. 20549,

           Plaintiff,

v.

MARC A. OSHEROFF,
BARRY GESSER,
ROBERT S. MITCHELL,
GLEN T. VITTOR and
SHELDON MASCHLER,

           Defendants.

98-914
CIV-HOEVELER
MAGISTRATE JUDGE
JOHNSON

## COMPLAINT

Plaintiff Securities and Exchange Commission ("SEC" or "Commission") alleges:

### SUMMARY

1.    From April 1993 through January 1994, Defendant Marc A. Osheroff ("Osheroff"), president of Alter Sales Co., Inc. ("ASI"), acting in concert with some or all of the other defendants named herein, engaged in a deliberate scheme to distribute four million shares of ASI stock in violation of the registration and antifraud provisions of the securities laws. The distribution purportedly was effected pursuant to the Commission's



Regulation S, which provides generally that the registration requirements of the federal securities laws do not apply to offers or sales of securities that occur outside the United States, provided the transaction is done in compliance with the requirements of the regulation.

2. The exemption from registration provided under Regulation S is available only if the buyer is offshore and no "directed selling effort" takes place in the United States during the selling period to condition the market for purchase of the stock. The regulation allows issuers of securities to sell to foreign investors on condition that the securities are not offered or sold to any person in the United States before the expiration of a 40 day restricted period. It further stipulates that the exemption is not available with respect to any transaction or series of transactions that, although in technical compliance with the rules, is part of a plan or scheme to evade the registration provisions of the Securities Act.

3. Beginning on or about April 22, 1993, Osheroff caused ASI to sell three million unregistered shares of newly issued stock at a substantial discount from then prevailing market prices to one Martin Clainey ("Clainey"), a fictitious foreign investor. At the time of purchase, Clainey purportedly gave ASI promissory notes in lieu of cash for some of the shares; in other instances, Clainey neither paid cash nor gave ASI notes to evidence his obligation to the company. Within days or weeks after they were issued, most of the unregistered shares were transferred into new accounts opened in Clainey's name with brokers in Florida and New York: defendants Glen Vittor ("Vittor"), at Sovereign Equity Management Corp. ("SEMC"); Sheldon Maschler ("Maschler"), at

Datek Securities Corp. ("Datek"); and Baird, Patrick & Co. (Baird, Patrick). The balance was deposited into the brokerage account of defendant Robert S. Mitchell ("Mitchell"), an associate of Osheroff and employee of ASI. The three million shares were soon resold at prevailing market prices in the United States, approximately 80 percent of them within forty days of their original issuance.

4. In a separate transaction purportedly pursuant to Regulation S, Osheroff caused ASI to sell one million unregistered shares of stock to Bauman, S.A. ("Bauman"), a newly-formed Bahamian entity, at a substantial discount from prevailing market prices. The majority of these shares likewise were soon resold in the United States at market prices.

5. To favorably influence the price of ASI stock while the distribution was underway, Osheroff and Barry Gesser ("Gesser"), ASI's public relations professional, caused the company to issue a series of press releases containing false information calculated to generate investor interest in the stock. Those releases announced interest by foreign firms in acquiring the company or making a large investment in it. The entities purportedly interested in making the acquisitions did not exist.

6. By immediately selling the stock at market prices, the schemers were able to capture for themselves and pocket the discount at which the stock had been issued. That discount ranged from 40 percent to 85 percent of the market price on the day of issuance. The resales yielded more than $6.5 million in illegal profits.

7. As a result of the foregoing, defendants Osheroff, Gesser, Mitchell, Vittor and Maschler violated Sections 5(a) and 5(c) of the Securities Act of 1933 ("Securities

Act") [15 U.S.C. §§ 77e(a) and 77e(c)], and defendants Osheroff, Gesser, Mitchell and Vittor violated Section 17(a) of the Securities Act [15 U.S.C. §§ 77q(a)] and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

8.  The Commission seeks a judgment permanently enjoining Osheroff, Gesser, Mitchell, Vittor and Maschler from further securities law violations, ordering them to disgorge the illegal profits obtained through these transactions and to pay civil monetary penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)] and imposing an officer and director bar against Osheroff pursuant to Section 20(e) of the Securities Act [15 U.S.C. § 77t(e)] and Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)].

## JURISDICTION

9.  This Court has jurisdiction of this action pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa], and 28 U.S.C. §1331.

10. The Commission brings this action pursuant to authority conferred upon it by Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)], and Section 21(d)(1) of the Exchange Act [15 U.S.C. § 78u(d)(1)].

11. Defendants, directly or indirectly, have made use of the means and instrumentalities of interstate commerce, or of the mails, or of the facilities of a national securities exchange in connection with the acts, practices, and courses of business alleged

herein, certain of which have occurred within the Southern District of Florida. Venue is proper in this Court pursuant to Section 22 of the Securities Act [15 U.S.C. § 77u(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa].

## DEFENDANTS

12. Marc A. Osheroff, age 42, was, during the relevant period, the president, chief executive officer and a director of ASI.

13. Barry Gesser, age 35, was the president of Atlantis Equities Group, Inc., a public relations firm that did work for ASI during the relevant period.

14. Robert S. Mitchell, age 43, was an employee of ASI and a partner with Osheroff in a company called R & M Electronics.

15. Glen T. Vittor, age 36, was president of SEMC during the relevant period, and the account representative for the accounts of Martin Clainey and Bauman, Ltd., at the firm.

16. Sheldon Maschler, age 53, was a broker at Datek who opened an account in the name of Martin Clainey through which he sold his shares in ASI during the relevant period.

## OTHER INDIVIDUALS AND ENTITIES

17. Alter Sales Co., Inc., incorporated in Florida in 1957, was engaged during the relevant period in the distribution of automotive parts and accessories. The company went public in 1991, trading on the NASDAQ SmallCap market. Before the distributions

that are the subject of this Complaint, ASI had approximately two million shares outstanding.

18. Martin Clainey, age variously listed, was the fictitious foreign investor who purchased 3,000,000 unregistered shares of ASI common stock in a series of Regulation S offerings approved by the company's board between April and July, 1993, all of which were resold within the United States by the end of October, 1993.

19. Bauman, S.A., also identified as Bauman, Ltd., is an entity in the Bahamas that was issued 1,000,000 shares of unregistered ASI common stock in a Regulation S offering approved by the company's board in October, 1993, of which at least 700,000 were resold within the United States between October 1 and December 31, 1993.

## THE SCHEME TO SELL UNREGISTERED STOCK UNDER COVER OF REGULATION S: PHASE I

### The Groundwork

20. In a series of actions between April 22 and July 27, 1993, the board of ASI—composed of Osheroff and his now-deceased father-in-law, Herbert Alter—approved the sale of a total of three million unregistered shares of ASI common stock to Martin Clainey purportedly under the provisions of Regulation S. The first million were authorized to be sold at $0.75 per share, while the last two million were authorized at a price of $0.50 per share, for total proceeds of $1.75 million. During the period of these offerings, ASI's stock traded on the U.S. market at prices ranging between approximately $1.20 and $3.00 per share.

21. Osheroff caused ASI to issue the three million shares to Clainey without receiving payment for them at the time of the purported sale. Osheroff instructed ASI's transfer agent to issue the certificates for Clainey's shares without any legend to indicate restrictions on resale.

22. Following the first purported purchase, accounts in Clainey's name were opened at SEMC on April 23; at Baird, Patrick on May 13; and at Datek Securities Corp. in late July. Defendants Vittor and Maschler were the brokers for the accounts at SEMC and Datek respectively. Accounts in the name of Martin Clainey were opened at two banks in Luxembourg, a bank in Paris, and a bank in Jacksonville, Florida. A bank account in the name of "Martin Clainey or Marc Osheroff" was opened at Commercial Bank of Florida in Miami. "Clainey" is a fictitious person invented for this series of transactions.

23. Osheroff and Gesser colluded in the opening of brokerage and bank accounts in Clainey's name, and in the delivery of shares of ASI stock into the brokerage accounts.

### The Fraudulent Distribution

24. At least 2,775,000 of the shares that ASI authorized to be issued to Clainey purportedly pursuant to the Commission's Regulation S were delivered to the brokerage accounts opened in Clainey's name at SEMC, Baird, Patrick and Datek.

25. Another 200,000 shares that ASI issued to Clainey were transferred to Robert Mitchell, an associate of Osheroff and employee of ASI, who deposited them into

7

his own personal brokerage account at Prudential Securities ("Prudential"). To facilitate the resale of these shares, Mitchell falsely represented to Prudential that he had bought the ASI stock in a private transaction with another investor, and that he had no affiliation with ASI. Mitchell sold the 200,000 shares transferred to him and in turn remitted approximately 85 percent of the proceeds to the Clainey-Osheroff account at the Commercial Bank of Florida in Miami.

26. More than 2.4 of the 3 million shares of ASI stock purportedly issued to Clainey were sold in the United States market within 40 days of the time the shares were initially authorized. Virtually all three million shares were sold in the United States by mid-October, 1993.

27. Osheroff and Gesser oversaw the distribution of the unregistered ASI shares into the U.S. market, and directed the disposition of the proceeds from the sale of those shares.

### The Brokers

**Vittor**

28. The first 100,000 shares of stock purchased by "Clainey" were sold from a brokerage account opened in Clainey's name at SEMC. Defendant Vittor, principal of SEMC, was the account representative. Vittor opened the account, which lists an address for Clainey in the Grand Cayman Islands, on April 23, 1993—the same date the certificates for the stock were issued.

29. Although he had not received the ASI shares and the account held no cash or other securities as collateral, Vittor began selling shares of ASI for Clainey

8

immediately on April 23. By April 28 Vittor had sold 25,000 shares although he received no certificates for the stock until May 3, 1993. On May 5, Vittor sold 75,000 more shares for Clainey, despite having received certificates evidencing only 25,000 of those shares. He did not receive the certificates for the remaining 50,000 shares until May 11.

30. Shortly after the sales settled, Vittor directed that the proceeds from the sale of shares of ASI stock in the Clainey account be transferred offshore. On May 6, Vittor approved a wire for $56,290, the cash then in Clainey's account at SEMC, to a recently-opened bank account in Clainey's name in Luxembourg. On May 12, Vittor approved another wire, for $145,081, to the same destination, emptying the account at SEMC of the proceeds from the rest of the sales.

31. In August 1993 the clearing firm for the SEMC account froze it because mail addressed to Clainey in the Cayman Islands had been returned. However, Vittor opened another account for Clainey the same month, listing an address for him in France and using a different clearing firm.

32. The initial transaction in this account was the transfer of $2.137 million and 36,000 shares of ASI from a Clainey account at Datek. The shares of ASI were sold on September 21, and the proceeds, together with the previous balance of cash in the account (a total of $2.241 million), were wired to a bank account in the name of Birch Holdings, Ltd., in the Isle of Jersey.

33. Vittor knew or was reckless in not knowing that Clainey was a fictitious person. He sold the ASI shares through that account as part of a scheme to enrich his

9

codefendants or others by immediately realizing the discount at which those shares were issued and transferring the profits offshore.

**Maschler**

34. In late July and early August, 1993, some 1.4 million shares of ASI were delivered into an account in the name of Martin Clainey at Datek, with defendant Maschler serving as account executive. Maschler sold all but 36,000 of these shares within fifteen days of receipt, and less than 40 days after their issuance. Maschler did not make adequate inquiry to determine whether the sales were in violation of Section 5 of the Securities Act.

35. Of the $3.457 million in proceeds derived from the sale of ASI stock in the Clainey account at Datek, $1.32 million was transferred by wire to two bank accounts into which were deposited some of the other proceeds from the sale of the unregistered shares. The remaining shares and $2.137 million in cash were transferred to an account in Clainey's name at SEMC.

**Baird, Patrick**

36. Between May 13 and October 25, a total of 1,275,000 shares of ASI were delivered into, and sold from, an account in the name of Martin Clainey at Baird, Patrick.

37. The sale of these shares yielded $2.103 million in proceeds, which was wired out to bank accounts in the United States and Europe in a series of fifteen transfers over the approximately six month period.

## PHASE II

38. On October 1, 1993, the ASI board approved the issuance of another one million shares purportedly pursuant to an offering under Regulation S at $0.75 to an entity in the Bahamas called Bauman, S.A. Bauman was formally created on September 30, 1993, the day before the approval of the Regulation S offering. On the day it was formed, Bauman opened an account at SEMC with defendant Vittor as the account representative.

39. Osheroff caused ASI to issue the shares to Bauman. From mid-October 1993 to the end of the year, 700,000 shares of ASI were delivered by Bauman into its SEMC account. Vittor sold these 700,000 shares for Bauman into the U.S. market, at least 450,000 of them within 40 days of their issuance.

## THE FALSE PRESS RELEASES

40. During the period the unregistered shares of its stock were being resold in the United States, ASI issued a series of four press releases that contained materially false information about ASI designed to increase the price at which the schemers could sell their shares.

41. On July 13, 1993, ASI announced that a European auto parts business had made an informal inquiry to the company about the possibility of a merger with or the acquisition of ASI.

42. On July 23, 1993, ASI announced that its president—Osheroff— had received an offer from one "Group Hammer S.A." to purchase his shares for $2.75 each,

11

and that the offer was accompanied by a non-refundable deposit. ASI traded at a low of $1 7/8 the same day, but by the close of trading that day the price of its stock had increased to $2 7/16.

43. On July 29, 1993, the company announced that its principals had rejected the $2.75 per share offer for their stock, but that they were still negotiating with "Group Hammer SA."

44. On September 16, 1993, it announced that merger talks with an "unidentified European auto business" had been terminated.

45. Defendant Gesser at Atlantis Equities Group Inc. was listed as the contact person for the releases of July 13 and 23.

46. Each of these releases were false. Group Hahmer does not exist. There was no interest in acquiring ASI. The disclosures were made with the aim of fraudulently influencing the market price of ASI stock.

## THE PROCEEDS

47. The total proceeds from the sale of the Clainey shares came to $6.525 million. Proceeds from the sale of the 700,000 Bauman shares came to approximately $1.809 million.

48. The total profits from these sales, when the purported cost of the shares to Clainey and Bauman are deducted, amounted to approximately $6.509 million.

## CLAIM ONE

### (SALE OF UNREGISTERED SECURITIES)

**Violations of Sections 5(a) and 5(c)
of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)]**

49. Paragraphs 1 through 48 are hereby realleged and incorporated by reference.

50. By reason of the foregoing, defendants Osheroff, Gesser, Mitchell, Vittor and Maschler have violated, and unless restrained will violate in the future Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)].

## CLAIM TWO

### (ANTIFRAUD VIOLATIONS)

**Violations of Section 17(a) of the
Securities Act [15 U.S.C. §§ 77q(a)]
Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)], and
Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]**

52. Paragraphs 1 through 48 are hereby realleged and incorporated by reference.

53. By reason of the foregoing, defendants Osheroff, Gesser, Mitchell and Vittor directly or indirectly have violated, and unless restrained will violate in the future Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## **PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that this Court issue orders:

### I.

Permanently enjoining defendants and their officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them who receive actual notice by personal service or otherwise, from violating, directly or indirectly, Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)].

### II.

Permanently enjoining defendants Osheroff, Gesser, Mitchell and Vittor, their officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them who receive actual notice by personal service or otherwise, from violating, directly or indirectly, Sections 17(a) of the Securities Act [15 U.S.C. § 77q(a)] and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

### III.

Directing all defendants, and each of them, and their officers, agents, servants, employees, and attorneys, to disgorge all illegal gains, together with prejudgment interest.

### IV.

Directing defendants to pay civil penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u (d)(3)].

**V.**

Barring defendant Osheroff from acting as an officer and director of any issuer required to file reports pursuant to Sections 12(b), 12(g), or 15(d) of the Exchange Act, pursuant to Section 20(e) of the Securities Act [15 U.S.C. § 77t (e) and Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)2], as a result of his violations of Section 17(a) of the Securities Act and Section 10b of the Exchange Act and Rule 10b-5 thereunder.

**VI.**

Granting such other relief as this Court may deem just and proper.

Respectfully submitted,

GLENN A. HARRIS
Florida Bar No. 357588
Securities and Exchange Commission
1401 Brickell Avenue, Suite 200
Miami, FL. 33131
(305) 982-6341

THOMAS NEWKIRK
ERICH T. SCHWARTZ
CHARLES D. STODGHILL
KENNETH R. LENCH

Securities and Exchange Commission
450 Fifth Street, N.W., Mail Stop 8-8
Washington, DC 20549
Tel: (202) 942-4528 (Stodghill)
Fax: (202) 942-9569

Dated: April 23, 1998
Washington, DC

JS 44
(Rev. 07/89)

# CIVIL COVER SHEET

98-914

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.
(SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

CIV-HOEVELER

MAGISTRATE JUDGE
JOHNSON

**I (a) PLAINTIFFS**

SECURITIES AND EXCHANGE COMMISSION

**DEFENDANTS**

MARC A. OSHEROFF, BARRY GESSER, ROBERT S. MITCHELL, GLEN T. VITTOR, SHELDON MASCHLER

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF ______
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT DADE Co.
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

Miade 98 CV 914 / Hoveler / Johnson

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

CHARLES D. STODGHILL
ASSISTANT CHEIF LITIGATION COUNSEL
SECURITIES AND EXCHANGE COMMISSION
[4]50 Fifth Street, N.W. Washington D.C. 20549

ATTORNEYS (IF KNOWN)

FILED BY ___ D.C.
98 APR 23 PM 12:03
CARLOS JUENKE
CLERK U.S. DIST. CT.
S.D. OF FLA.-MIAMI

JC

**II. BASIS OF JURISDICTION** (PLACE AN x IN ONE BOX ONLY)

- [X] 1 U.S. Government Plaintiff
- [ ] 3 Federal Question (U.S. Government Not a Party)
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

Dade County

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (For Diversity Cases Only) (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

Violations of Sections 5(a) and 5(c) of the Securities Act[15 U.S.C. §§ 77e(a) and e(c)] SALE OF UNREGISTERED SECURITIES; and violations of 17(a) of the Securities [Ac]t[15 U.S.C. §§ 77q(a)], Sec. 10(b) Exchange Act[15 U.S.C.§78j(b)] Rule 10-5 thereunder[17 C.F.R.§240.10b-5] ANTIFRAUD

**V. NATURE OF SUIT** (PLACE AN x IN ONE BOX ONLY)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability | PERSONAL INJURY<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br><br>PERSONAL INJURY<br>☐ 362 Personal Injury—Med Malpractice<br>☐ 365 Personal Injury—Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>PERSONAL PROPERTY<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 610 Agriculture<br>☐ 620 Other Food & Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 R.R. & Truck<br>☐ 650 Airline Regs<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>PROPERTY RIGHTS<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark | ☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce/ICC Rates/etc.<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 810 Selective Service<br>☒ 850 Securities/Commodities/Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 895 Freedom of Information Act<br>☐ 900 Appeal of Fee Determination Under Equal Access to Justice<br>☐ 950 Constitutionality of State Statutes<br>☐ 890 Other Statutory Actions |
| REAL PROPERTY<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | CIVIL RIGHTS<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br><br>PRISONER PETITIONS<br>☐ 510 Motions to Vacate Sentence<br>Habeas Corpus:<br>☐ 530 General<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Other | LABOR<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Railway Labor Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | SOCIAL SECURITY<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br><br>FEDERAL TAX SUITS<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | |

**VI. ORIGIN** (PLACE AN x IN ONE BOX ONLY)

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT:** CHECK IF THIS IS A CLASS ACTION ☐ UNDER F.R.C.P. 23

**DEMAND $**

*Check YES only if demanded in complaint:*
JURY DEMAND: ☐ YES ☒ NO

**VIII. RELATED CASE(S)** (See instructions): **IF ANY**

JUDGE ______ DOCKET NUMBER ______

DATE 4-23-98

SIGNATURE OF ATTORNEY OF RECORD [signature]

UNITED STATES DISTRICT COURT

FPI-LEX3/91